IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
Southern Division

|  |  |  |
|---|---|---|
| **THORNELL JOHNSON,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-21-1657 |
| **OLYMPIA LAW GROUP,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION**</u>

In this action, Plaintiff Thornell Johnson brings Maryland consumer protection claims against Defendants Olympia Law Group ("OLG") and Matin Rajabov. ECF No. 1. Defendants have filed a Motion to Dismiss, ECF No. 7, which is unopposed. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, the Court will grant the Motion to Dismiss.

**I.   BACKGROUND[1]**

Plaintiff Johnson owned a property in Accokeek, Maryland. ECF No. 1 ¶ 3.[2] Defendant OLG is a Californian company that performs services in Maryland. *Id.* ¶ 5. Defendant Rajabov is a resident of California who is the principal attorney and owner of OLG. *Id.* OLG provides loan modification services. *See id.* ¶¶ 1, 5. OLG advertises that it can help homeowners stop foreclosure, halt a forced sale, or restructure their mortgage. *Id.* ¶ 6. Plaintiff Johnson had

---

[1] All facts herein are taken from Plaintiff's Complaint, ECF No. 1, and presumed true.

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

difficulty paying his mortgage, which was financed by Selene Finance PC, a non-party here. *Id.* ¶ 20. On July 1, 2017, Johnson went into default on his mortgage. *Id.* ¶ 21. On September 15, 2020, OLG contacted Johnson and stated that they could offer loan modification assistance. *Id.* ¶ 22. The parties entered into an agreement, and over the next several months, employees of OLG represented that they were working on Johnson's loan modification. *Id.* ¶¶ 27, 28.

On January 29, 2021, shortly before Johnson's property was scheduled to go to foreclosure sale, Johnson called Selene Finance himself to ask about his loan modification application. *Id.* ¶ 29.[3] Selene Finance told Johnson that his modification would require an upfront payment of $15,000 and an interest rate increase to 5%. *Id.* Johnson was also informed that he must cure the overdue balance of $140,000 before the mortgage would be reinstated. *Id.* Johnson was then contacted by Adriana Rodriguez, an OLG employee, who told him the same terms. *Id.* ¶ 30. Johnson was informed that he had until March 1, 2021, to accept the terms and cure the overdue balance. *Id.*

Johnson informed OLG that he was not satisfied with their representation. *Id.* ¶ 31. Johnson pointed out that these terms were not the terms that OLG had represented it could obtain in his initial consultation. *Id.* Abby Castillo, an OLG employee, told Johnson that these terms were typical of loan restructuring. *Id.* ¶ 32. Johnson requested foreclosure mediation on April 20, 2021, attempting to avoid a foreclosure sale. *Id.* ¶ 36. Selene informed Johnson that modification was no longer possible. *Id.* ¶ 37. Selene Finance foreclosed on Johnson's home on June 8, 2021. *Id.* ¶ 35.

---

[3] Plaintiff sometimes refers to these events as happening in 2020. However, Plaintiff states that OLG first began working with him in the fall of 2020, and then these events continued into the next January, February, and March. Therefore, the Court interprets these later events as occurring in January, February, and March of 2021.

Johnson filed the Complaint on July 6, 2021. ECF No. 1. Johnson brought one count pursuant to the Maryland Credit Services Businesses Act, Md. Code Ann. Com. Law § 14-1901, *et seq.*, and the Maryland Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.* Defendants were served on December 23, 2021. *See* ECF No. 5. On January 13, 2022, Defendants filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 7. Alternatively, Defendants request that Johnson be required to submit a more definite statement pursuant to Rule 12(e). Because Johnson is proceeding *pro se*, he was sent a Rule 12/56 Notice on January 18, 2022. ECF No. 9.[4] Johnson has not responded to the Motion to Dismiss.[5]

## II.   STANDARD OF REVIEW

"A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6)." *Maheu v. Bank of Am., N.A.*, No. 12-cv-508-ELH, 2012 WL 1744536, at *4 (D. Md. May 14, 2012) (citing *German v. Fox*, 267 Fed. Appx. 231, 233 (4th Cir. 2008)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the sufficiency of Plaintiff's claims, the Court accepts factual allegations in the Complaint as true and construes the factual allegations in the light most favorable to the Plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Self-represented litigants'

---

[4] A Rule 12/56 Notice advises a pro se plaintiff of his rights under Federal Rule of Civil Procedure 12 and Federal Rule of Civil Procedure 56.

[5] As this Court has noted before, "'[w]hen a plaintiff fails to oppose a motion to dismiss, a district court is 'entitled, as authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted in the motion.'" *Zos v. Wells Fargo Bank, N.A.*, No. 16-cv-00466-GJH, 2017 WL 221787, at *2 n.5 (D. Md. Jan. 18, 2017) (quoting *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 515 (D. Md. 2016) (internal quotations and citations omitted)).

pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank*, N.A., No. 10-cv-3517-DKC, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim.") (citation omitted), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

### III. DISCUSSION

Johnson references both the Maryland Credit Services Business Act ("MCSBA") and the Maryland Consumer Protection Act ("MCPA") in the Complaint's only count. The MCSBA provides that a credit services business:

> [M]ay not "[c]harge or receive any money or other valuable consideration prior to full and complete performance of the services that [it] has agreed to perform for or on behalf of the consumer," must be licensed by the Commissioner, must provide the consumer with certain specified information before "either the execution of a contract or agreement between a consumer and a credit services business or the receipt by the credit services business of any money or other valuable consideration," must use contracts meeting certain requirements, and must obtain a surety bond.

*Comm'r of Fin. Regul. v. Brown, Brown, & Brown, P.C.*, 449 Md. 345, 351–52, 144 A.3d 666, 670–71 (2016) (citing Md. Code Ann., Com. Law § 14-1901 *et seq.*). As relevant here, the MCSBA "applies to those who offer, in return for the payment of money, to assist a homeowner in default on a mortgage loan to fend off foreclosure by obtaining a modification of that loan from the lender." *Id.*

The Maryland Consumer Protection Act ("MCPA") "prohibits commercial entities from engaging in any 'unfair or deceptive trade practice' in '[t]he extension of consumer credit.'"

4

*Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 534 (D. Md. 2011) (quoting Md. Code Ann., Com. Law § 13–303). As relevant here, Section 13-301(1) "prohibits any '[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers.'" *Barry v. EMC Mortg. Corp.*, No. 10-cv-3120-DKC, 2012 WL 3595153, at *6 (D. Md. Aug. 17, 2012) (quoting Md. Code Ann., Com. Law § 13-301).

      Defendants assert that there is no express or implied private right of action in the MCSBA. ECF No. 7-1 at 3. Maryland courts have noted that the "provisions of the MCSBA are primarily enforced by the Commissioner of Financial Regulation[.]" *Comm'r of Fin. Regul.*, 449 Md. at 352. "Violations of the MCSBA also may be enforced by the Consumer Protection Division of the Office of the Attorney General as violations of the Consumer Protection Act." *Id.* n.3. Pursuant to the MCSBA, "[a]ny consumer who has reason to believe that this subtitle has been violated . . . may file a written complaint setting forth the details of the alleged violation with the Commissioner." Md. Code Ann., Com. Law § 14-1911(a).

      It is not necessary to resolve whether the MCSBA allows a private right of action. Johnson alleges one count under both the MCSBA and the MCPA. *See* ECF No. 1 ¶ 39. A violation of the MCSBA constitutes an "unfair or deceptive trade practice" under the MCPA, Md. Code Ann., Com. Law § 14-1914(a), and the MCPA expressly does allow "any person" to "recover for injury or loss" sustained from prohibited practices, Md. Code Ann., Com. Law § 13-408(a). A plaintiff bringing such a claim must also show "'the nature of the actual injury or loss that he or she allegedly sustained as a result of the prohibited practice[,]'" *Allen v. CitiMortgage, Inc.*, No. 10-cv-2740-CCB, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 148, 916 A.2d 257, 280 (2007) (internal quotations and

citations omitted)). The injury must be caused by a plaintiff's reliance upon the misrepresentation or deceptive practice. *See Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (citing *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 A.2d 200, 235 (2000)). Thus, Johnson is able to claim a violation of the MCSBA through the MCPA. *See, e.g.*, *Haley v. Corcoran*, No. 09-cv-1338-WDQ, 2010 WL 4117267, at *5 (D. Md. Oct. 20, 2010), *report and recommendation adopted*, No. 09-cv-1338-WDQ, 2010 WL 11549758 (D. Md. Nov. 15, 2010).

Regardless, Johnson has failed to state a claim. Much of the Complaint is difficult to understand, even construing the Complaint liberally and in the light most favorable to Johnson. Some of Johnson's allegations center on "the Cabezas" as the plaintiffs. ECF No. 1 ¶¶ 44, 47. Johnson also references "Richey" as a fellow defendant, but then never refers to this party again. *See id.* ¶ 28(a). Other sections of the Complaint contain incorrect numbering and cross-references. For example, Johnson alleges, in conclusory fashion, that OLG illegally did not provide him with the right to cancel the agreement "as described in ¶ 47." *Id.* ¶ 46. However, paragraph 47 does not concern the right to cancel. *Id.* ¶ 47. Defendant has attached court filings from *Cabeza v. Richey L. & Assocs.*, No. 13-cv-3511-WDQ, 2014 WL 4635381, at *6 (D. Md. Sept. 16, 2014), to show that Johnson likely copied most of the Complaint from *Cabeza*. *See* ECF Nos. 7-2, 7-3. Indeed, much of the Complaint here is nearly identical to the complaint in *Cabeza,* with some dates and party names changed.[6]

---

[6] The Court may consult these documents without converting the Motion to Dismiss into one for Summary Judgment. *See Eng. v. Ryland Mortg. Co.*, No. 16-cv-3675-GJH, 2017 WL 3475674, at *1 n.2 (D. Md. Aug. 11, 2017) (citing *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700. 705 (4th Cir. 2007) ("In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record.")).

Johnson's other allegations lack sufficient facts. Johnson claims that OLG's "transaction and services were simply false and misleading." ECF No. 1 ¶ 24. Johnson also claims that OLG performed "illegal and misleading communications" to Selene Finance. *Id.* ¶ 28. Johnson never clarifies how communications or services were false or illegal. Johnson also fails to adequately allege the nature of his injury or loss. He states, without any further explanation, that he is owed $577,922 in compensatory damages, punitive damages for "willful violations of Maryland law[,]" and "reasonable attorney's fees and costs[.]" *Id.* ¶ 51(a). He also states, in a conclusory fashion, that these damages were all "a result of . . . unfair or deceptive and unlawful practices[,]" but does not describe how. *Id.*[7] Thus, Johnson has failed to state a claim.

### IV.    CONCLUSION

For the reasons discussed, the unopposed Motion to Dismiss is **GRANTED**. A separate Order follows.

Dated:  May   19, 2022                                        /s/_____
                                                              GEORGE J. HAZEL
                                                              United States District Judge

---

[7] Johnson also alleges that OLG caused the foreclosure of his home because of its false and misleading guarantees, ECF No. 1 ¶ 35, but the cited foreclosure action is from 2013—long before the events here. This cited foreclosure action also appears to be connected to the *Cabeza* case. *See* ECF No. 7-2.